UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ARTHUR WEST,

    Plaintiff,

v.

STEPHEN L. JOHNSON, U.S. EPA ADMINISTRATOR, U.S. SECRETARY OF COMMERCE, WASHINGTON STATE DEPARTMENT OF ECOLOGY, STATE OF WASHINGTON, PORT OF OLYMPIA, CITY OF OLYMPIA, WEYERHAEUSER, LOTT, FEDERAL RAILROAD ADMINISTRATION,

    Defendants.

CASE NO. C08-5741RJB

ORDER GRANTING WASHINGTON STATE DEPARTMENT OF ECOLOGY AND STATE OF WASHINGTON'S FRCP 12 (b)(6) AND 12(b)(1) MOTION TO DISMISS and THE FEDERAL DEFENDANTS' MOTION TO DISMISS and DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT

This matter comes before the Court on Defendants Washington State Department of Ecology ("DOE") and State of Washington's FRCP 12 (b)(6) and 12(b)(1) Motion to Dismiss (Dkt. 69), Lisa P. Jackson, Administrator, U.S. Environmental Protection Agency ("EPA"); Gary Locke, Secretary, U.S. Department of Commerce (National Oceanic and Atmospheric Administration ("NOAA")), Ray La Hood, Secretary, U.S. Department of Transportation's ("Federal Railroad Administration") ("FRA") (collectively "Federal Defendants") Motion to Dismiss (Dkt. 68), and Plaintiff's Motion to Amend Complaint (Dkt. 83).

The Court has considered the pleadings filed in support of and in opposition to the motions and the file herein.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

On December 12, 2008, Plaintiff, *pro se,* filed this suit asserting claims under several federal and state statutes. Dkt. 1. As is relevant to the instant motions, Plaintiff broadly asserts that some or all the Defendants have violated the Clean Water Act ("CWA"), 33 U.S.C. § 1251 *et seq.* (including provisions of the National Pollutant Discharge Elimination System ("NPDES")), the Coastal Zone Management Act ("CZMA"), 16 U.S.C. § 1451 *et seq.*, and the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq. Id.*

**A.  BACKGROUND ON STATUES AT ISSUE IN THE MOTIONS**

    1.  <u>CWA & NPDES Program</u>

The CWA creates a program to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). In order to achieve its objectives and goals, the CWA imposes limits and controls on discharges from point sources through effluent limitations. 33 U.S.C. § 1311(b). Under the CWA, the discharge of unpermitted pollutants is prohibited. *Natural Resources Defense Council v. U.S. E.P.A.,* 542 F.3d 1235, 1239 (9th Cir. 2008). The CWA establishes a permitting system that "authorizes the discharge of some pollutants - the [NPDES]." *Id.* (citing CWA § 402, 33 U.S.C. § 1342).

Under the CWA, Congress intended that the states be primarily responsible to "prevent, reduce, and eliminate pollution." 33 U.S.C. § 1251(b). The CWA requires that each state adopt water quality standards for its waters which shall protect the quality of the water and its characteristic uses. 33 U.S.C. § 1313(a)-(c). Further, states are directed to identify those of its waters for which the effluent limitations established pursuant to §§ 1311(b)(1)(A) and (B) are not stringent enough to implement any water quality standard. 33 U.S.C. § 1313(d). The CWA directs the states to establish a total maximum daily load ("TMDL") for pollutants necessary to implement the applicable water quality standards. 33 U.S.C. § 1313(d).

A state may apply to the EPA get permission to administer the NPDES program in that state. 33 U.S.C. § 1342(b). The "EPA 'shall approve each submitted program' for transfer of permitting authority to a State 'unless it determines that adequate authority does not exist' to ensure that nine specified criteria are satisfied." *National Ass'n of Home Builders v. Defenders of*

*Wildlife*, 551 U.S. 644, 650-1 (2007). DOE has been approved by EPA to administer Washington's NPDES program. Fed. Reg. 26,061; RCW 90.48.260.

### 2. CZMA & Washington's SMA

The CZMA was established to promote the "effective management, beneficial use, protection, and development of the costal zone." 16 U.S.C. § 1451(a). The federal government offers matching grants to states who develop and administer programs regulating the development of their coastal zones. 16 U.S.C. § 1455. Washington's Shoreline Management Act ("SMA"), one such program, regulates the development of Washington's costal zones. RCW 90.58.300. DOE is the designated state agency responsible for Washington's SMA program. *Id.* As part of the Washington Environmental Hearings Office, the Shoreline Hearings Board and Pollution Control Hearings Board hear appeals from the DOE's determinations regarding the CWA and CZMA. *See* RCW 43.21B and RCW 90.58. Plaintiff's claims against the Washington Environmental Hearings Office were dismissed on June 2, 2009. Dkt. 51.

### 3. NEPA

NEPA has two objectives. "First, it places upon a [federal] agency the obligation to consider every significant aspect of the environmental impact of a proposed action. Second, it ensures that the agency will inform the public that it has indeed considered environmental concerns in its decisionmaking process." *Baltimore Gas and Elec. Co. v. Natural Resources Defense Council, Inc.*, 462 U.S. 87, 97 (1983). To achieve its' objectives, NEPA requires "federal agencies to prepare an [Environmental Impact Statement ("EIS")] for major federal actions significantly affecting the quality of the human environment." *Northwest Environmental Defense Center v. Bonneville Power Admin.*, 117 F.3d 1520, 1536 (9th Cir 1997) (*citing* 42 U.S.C. § 4332(2)(C))(*internal quotations omitted*).

## B. PENDING MOTIONS

### 1. DOE and the State's Motion to Dismiss

DOE and the State now move for dismissal of Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6), arguing that: 1) they are entitled to Eleventh Amendment immunity for the claims

asserted against them, 2) Plaintiff's CWA claims against DOE and the State lack subject matter jurisdiction, and 3) the Court does not have jurisdiction to hear Plaintiff's CZMA claims against them.  Dkts. 69, and 86.

On July 2, 2009, Plaintiff filed a Motion to Amend the Complaint to name state actors in their official capacities.  Dkt. 83.  On July 13, 2009, Plaintiff filed a motion for an extension of time to respond to the DOE and State's Motion to Dismiss and several other pending Motions to Dismiss.  Dkt. 89.  The extension was granted and all the pending Motions to Dismiss noted prior to July 24, 2009, were renoted to July 24, 2009.  Dkt. 91.  Plaintiff's Motion to Amend the Complaint was noted for July 31, 2009, in order to give all parties notice and an opportunity to be heard.  Dkt. 91.

Aside from his motion to amend, Plaintiff does not meaningfully respond to DOE and the State's motion.

In accordance with the Order renoting the motions to dismiss, DOE and the State have filed a Reply.  Dkt. 101.  DOE and the State indicate that their reply is also a response to Plaintiff's Motion to Amend.  *Id.*  DOE and the State argue that Plaintiff's failure to respond to their motion to dismiss indicates that motion has merit.  *Id.*  They assert that Plaintiff offers no argument to support his contention that naming state officials, here Governor Christine Gregoire and Ecology Director Jay Manning, in their official capacities, invokes the exception announced in *Ex Parte Young*, 209 U.S. 123 (1908) to Eleventh Amendment immunity.  *Id.*  They argue that Plaintiff fails to show how, even if amended, his complaint would survive DOE's and the State's remaining arguments in their Motion to Dismiss.  *Id.*  DOE and the State point out that "Plaintiff's allegation that Ecology has issued 'vague, overbroad, and overly permissive' permits to municipal and industrial dischargers, is properly addressed in a timely appeal to the Pollution Control Hearings Board under RCW 43.21B.110." *Id.*  DOE and the State note that the decisions of which Plaintiff complains are appealable to the state courts, providing Plaintiff ample opportunity to gain review of their actions.  *Id.*

    2. <u>Federal Defendants' Motion to Dismiss</u>

The Federal Defendants move to dismiss Plaintiff's claims against them, arguing that: 1) Plaintiff does not have standing and so this Court does not have subject matter jurisdiction to consider the case against them, 2) claims against NOAA should be dismissed, 3) Plaintiff's claims against FRA must be dismissed because NEPA's requirement that an EIS be prepared does not apply here, 4) Plaintiff's CWA claims against the EPA should be dismissed because this Court lacks jurisdiction to hear them due to Plaintiffs failure to identify a nondiscretionary duty that the administrator failed to perform, 5) CWA does not provide a private cause of action to sue for an alleged duty under the CZMA, and so Plaintiff's CZMA claim should be dismissed, 6) this Court lacks subject matter jurisdiction because the Courts of Appeal have exclusive jurisdiction to review EPA determinations as to state permit programs. Dkt. 68.

Plaintiff has filed several pleadings in this matter without clearly identifying which pleading applies to which motion, if any. On July 22, 2009, Plaintiff filed a pleading entitled "Plaintiff's Response to Federal and City Motions." Dkt. 108. In that pleading, Plaintiff argues that he established that he has standing in this matter as is explained in his "standing declaration" (Dkt. 110). *Id.* Plaintiff then argues that he has stated a claim under the CWA against the EPA administrator because she failed to perform a mandatory duty. *Id.* Plaintiff argues that the "widespread and systemic failures" of the state's permitting system bring this case within the fact pattern of *Save the Valley v. U.S. EPA,* 99 F. Supp.2d 981 (S.D. Ind. 2000), and "invoke the mandatory duties" of the Administrator. *Id.*

### 3. Plaintiff's Motion to Amend

Plaintiff moves to amend his Complaint, to add claims against Washington State Governor, Christine Gregoire, and Director of Washington State Department of Ecology, Jay Manning. Dkt. 83 (proposed amendments found at Dkt. 108). Plaintiff also seeks to amend his Complaint to add allegations regarding his NEPA claim. *Id.* Plaintiff also asserts his prior claims. *Id.*

### C. ORGANIZATION OF THE OPINION

This opinion will first address the issues raised in DOE and the State's Motion to Dismiss,

ORDER
Page 5

and then the issues raised in the Federal Defendants' Motion to Dismiss. This opinion will lastly address whether Plaintiff should be granted leave to amend his Complaint as it pertains to the state actors and federal defendants.

## II. DISCUSSION

### A. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM - STANDARD

Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Under Fed. R. Civ. P. 12 (b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Dismissal of a complaint may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*internal citations omitted*).

Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(*citing Twombly*, at 570). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. First, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.*, at 1950. Secondly, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content must be plausibly suggestive of a claim entitling the pleader to relief." *Moss v. U.S. Secret Service,* ___ F.3d ____, 2009 WL 2052985, 6 (9th Cir. July 16, 2009).

If a claim is based on a proper legal theory but fails to allege sufficient facts, the plaintiff should be afforded the opportunity to amend the complaint before dismissal. *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983). If the claim is not based on a proper legal theory, the claim should be dismissed. *Id*. "Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." *Moss v. U.S. Secret Service,* 2009 WL 2052985 (9th Cir. July 16, 2009).

**B.  ISSUES RAISED IN DOE and STATE'S MOTION TO DISMISS**

1. <u>Eleventh Amendment Immunity</u>

"As the Supreme Court has applied the Eleventh Amendment, an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Pittman v. Oregon Employment Dept.,* 509 F.3d 1065, 1071 (9th Cir. 2007) (*internal quotations omitted*). State immunity extends to state agencies. *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc*., 506 U.S. 139, 142-46 (1993). There are exceptions to Eleventh Amendment immunity. *Id.* For example, sovereign immunity does not bar suits for prospective injunctive relief against individual state officials acting in their official capacity. *Id*. A state may also waive its Eleventh Amendment immunity. *Pittman*, at 1071. "A waiver of Eleventh Amendment immunity must unequivocally evidence the state's intention to subject itself to the jurisdiction of the federal court." *Hill v. Blind Industries and Services of Maryland*, 179 F.3d 754, 758 (9th Cir. 1999) (*internal citations omitted*). Congress may also abrogate a state's Eleventh Amendment immunity. *Id.* Congressional intent to abrogate immunity "must be unmistakably clear in the language of the statute, so the courts may be certain of Congress' intent and so the state has fair warning if it wishes to oppose that legislation." *Id.*

a. *Immunity from CWA Claims Against DOE and the State*

"When Congress enacted the CWA citizen suit provision, it specified that it was legislating to the extent permitted by the Eleventh Amendment." *Natural Resources Defense Council v. California Dept. of Transp.*, 96 F.3d 420, 423 (9th Cir. 1996). The citizen suit provision states in part:

> Any citizen may commence a civil action on his own behalf-(1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution ) who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation.

33 U.S.C. § 1365(a) (emphasis added). The Ninth Circuit has held that the state and state agencies are entitled to Eleventh Amendment immunity from suits brought under the CWA. *Natural Resources Defense Council v. California Dept. of Transp.*, 96 F.3d 420, 423 (9th Cir. 1996).

DOE and the State's Motion to Dismiss Plaintiff's CWA claims against them should be granted. Plaintiff makes no showing that DOE or the State have in some manner waived Eleventh Amendment immunity or that Congress has abrogated their immunity. Plaintiff's CWA claims against DOE and the State should be dismissed.

        b. *Immunity from Other Claims Against DOE and the State*

Plaintiff does not dispute that DOE and the State are entitled to Eleventh Amendment immunity on his other claims. To the extent that Plaintiff makes other claims against these Defendants, they should be dismissed. Although DOE and the State are entitled to Eleventh Amendment immunity from suit, this Opinion will briefly address the remaining issues raised in their Motion to Dismiss.

    2.     <u>CWA Claim Against DOE and the State</u>

"The Supreme Court in *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n*, 453 U.S. 1, 21(1981), concluded that Congress intended to limit access to federal court to enforce the CWA to the express enforcement provisions of the Act." *City of Las Vegas, Nevada v. Clark County, Nevada*, 755 F.2d 697, 703(1985). CWA causes of action are limited to those brought under, and conforming to the requirements of § 505 found at 33 U.S.C. § 1365. *Id.*

Section 505(a)(2) of the CWA permits citizen suits against the EPA Administrator where the Administrator is alleged to have failed to perform a non-discretionary duty. 33 U.S.C. § 1365(a)(2). Plaintiff's claims against the EPA Administrator will be addressed below.

As stated in full in Section II. B.1.a, of this opinion, Section 505(a)(1)(A) provides a

ORDER
Page 8

cause of action against any person or state (subject to the State's Eleventh Amendment defense), who is "alleged to be in violation of ... an effluent standard or limitation under this chapter." *City of Las Vegas*, at 703 (*citing* 33 U.S.C. § 1365(a)(1)). Section 505(a)(1)(B) of the CWA provides a cause of action against any person or state (subject to the State's Eleventh Amendment defense), who is "alleged to be in violation of . . . an order issued by the Administrator or a State with respect to such a standard or limitation." *Id.*

Plaintiff's CWA claim against DOE and the State should be dismissed. "Section 505(a)(1) provides a cause of action only against one discharging excess pollutants into a waterway." *City of Las Vegas*, at 703. Plaintiff does not allege that the DOE or State are dischargers and so "cannot be in violation of an 'effluent standard or limitation.'" *City of Las Vegas*, at 703. Plaintiff does not allege that DOE or the State are in "violation of . . . an Order issued by the Administrator." *Id.* Plaintiff alleges that the State of Washington "through its Phase II municipal stormwater permits and its Industrial Stormwater general permit, has failed to adequately supervise or control discharges in accord with Title 33 U.S.C." Dkt. 1, at 3. Plaintiff further alleges that the State of Washington has violated the "monitoring, reporting, enforcement, funding, personnel, and manpower" requirements of its administration of the NPDES program under the CWA. *Id.,* at 5 (*citing* 33 U.S.C. 1314(i)(2)). Plaintiff alleges that:

> Due to a pattern and policy of secrecy and violation of permitting and environmental laws, the City [of Olympia], Port [of Olympia], Lott and Weyerhaeuser, with the complicity of [DOE] have colluded to construct a defective and unpermitted wastewater collection and discharge system, and further colluded to evade reporting and effluent limitation standards and illegally discharge toxic waste into the sound in amounts dangerous to human health and endangered species, and their habitat, including the Puget Sound Resident Orcas.

*Id.,* at 7. Plaintiff alleges that DOE and the State have formally "concluded that egregious violations by the Port of its NPDES Permit have occurred, as well as violations of standards of performance as defined in [sic] prohibited by law." Since none of the DOE and the State's alleged actions fall within CWA § 505(a)(1), 33 U.S.C. § 1365(a)(1), the CWA claims against them should be dismissed for lack of jurisdiction. *City of Las Vegas*, at 703.

        3.     <u>CZMA Claim</u>

Article III of the U.S. Constitution gives the federal courts power to hear cases "arising under" the Constitution, laws, or treaties of the United States. Alleging a violation of a federal statute does not state a claim "arising under the Constitution, law, or treaties of the United States" if Congress has not created a federal private right of action under the statute allegedly violated. *Merrell Dow Pharmaceuticals, Inc., v. Thompson,* 478 U.S. 804, 817 (1986).

Plaintiff's CZMA claims against DOE, the State, and the Federal Defendants should be dismissed. As is relevant to DOE and the State of Washington's Motion to Dismiss, Plaintiff's Complaint alleges that they "have failed to properly implement the CZMA as required by the states [sic] voluntary agreement, and a cause of action for declaratory relief exists to declare that such implementation is necessary." Dkt. 1, at 4. Plaintiff has failed to point to any authority upon which to conclude that he has a private right of action under the CZMA against DOE, the State, or Federal Defendants.

Plaintiff's attempt to use the citizen's suit provision of the CWA is unavailing. Plaintiff makes no showing that the CWA's citizen suit's provision applies to the CZMA. Plaintiff's CZMA claim against DOE, the State and the Federal Defendants should be dismissed.

**C. ISSUES RAISED IN THE FEDERAL DEFENDANTS' MOTION**

    1. <u>Whether Plaintiff has Article III Standing for his CWA and CZMA Claims</u>

Under Article III, § 2 of the U.S. Constitution, federal courts are also limited to deciding "cases" and "controversies." In order to bring suit in federal court, Plaintiffs must show that they have "standing" under Article III. *Natural Resources Defense Council v. U.S. E.P.A.*, 542 F.3d 1235, 1244 (9th Cir. 2008).

> To meet Article III's standing requirements, the party invoking federal jurisdiction bears the burden to show that it has: (1) suffered an injury in fact-an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* (*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992))(*internal quotations omitted*).

Plaintiff argues that he has standing because:

> He uses the waters of the State of Washington directly affected by defendants'
> discharges and that defects in the vague, overbroad, and overly permissive general
> Municipal and Industrial state regulatory permitting schemes, and that his health
> and aesthetic and recreational enjoyment of Budd Inlet has been and will be
> diminished by defendants continuing CWA violations.

Dkt. 108, at 2. Plaintiff submits an additional pleading entitled "Plaintiff's Supplemental Declaration on Standing" where he states that he "employs, enjoys and uses the waters of lower Budd Inlet, the shores surrounding it and the areas in the City of Olympia and those on or immediately adjacent to the Port of Olympia and the East Bay site regularly, shops a the Farmers [sic] Market and recreates at Priest Point." Dkt. 110, at 2. Plaintiff asserts that his "use and enjoyment will be lessened and will continue to be lessened by the defendants discharge of pollution and their unpermitted reckless construction activities on toxic waste sites like that of East Bay and the Intermodal project." *Id.*, at 2-3. Plaintiff further states that he "will be and is affected by increased dust and waterborne contaminants that have resulted from the City and Port's NEPA violations and their violations of the CWA." *Id.*, at 3.

        a. *Injury in Fact?*

"The 'injury in fact' requirement in environmental cases is satisfied if an individual adequately shows that she has an aesthetic or recreational interest in a particular place, or animal, or plant species and that that interest is impaired by a defendant's conduct." *Natural Resources Defense Council,* at 1245.

Plaintiff here has adequately shown that he has an injury which is sufficiently concrete and particularized for the purposes of Article III standing for his CWA/CZMA claims. *Natural Resources Defense Council,* at 1245 (holding that plaintiff's claims that their use and enjoyment of particular waterways has been diminished due to storm water discharge from defendants was sufficient to show an "injury in fact"). The Federal Defendants argue that Plaintiff's reliance upon the allegations of standing in his Complaint are not adequate because in order to establish standing, an affidavit or declaration is required. Dkt. 100, at 3 (*citing Summers v. Earth Island Institute,* 129 S.Ct. 1142, 1149). *Summers* involved groups of conservationists asserting that they had standing under Article III, but failed to provide any evidence from members of their groups,

ORDER
Page 11

aside from general allegations in their complaint, that they had an "injury in fact" pertaining to the claims that were before the Court. Here, unlike in *Summers*, Plaintiff has repeatedly asserted specific, personal injuries. Plaintiff fails to show, however, that his CWA and CZMA injury is caused by the Federal Defendants.

      b. *Injury is Fairly Traceable to the Challenged Action of the Federal Defendants?*

The connection between Plaintiff's asserted injuries and the challenged action of the Federal Defendants, in regard to his CWA and/or CZMA claims, is too tenuous to be considered "fairly traceable." *Natural Resources Defense Council*, at 1244. Although it is less than clear, Plaintiff appears to make the allegation that his injury is connected to EPA's decision to allow the State of Washington to administer the NPDES permitting program even though the State is not in compliance with the CWA. This bare assertion, without more, is inadequate. Plaintiff fails to show any connection between his injury and NOAA's administration of the CZMA. Plaintiff does not allege sufficient facts from which the Court could infer that the Federal Defendants' actions are traceable to Plaintiff's injuries regarding his CWA or CZMA claims.     c.

*Likely that the Injury will be Addressed by a Favorable Decision*?

In so far as the relief that he seeks from the Federal Defendants, Plaintiff requests an order that the "Administrator be compelled to revoke the State of Washington's authority to implement the CWA, and that of any state similarly situated." Dkt. 1, at 12. There is nothing in the record to infer that the granting of this relief would address Plaintiff's injuries. Plaintiff does not argue or allege that the EPA's direct administration of the NPDES permitting program in Washington would improve the quality of the waters at issue. Additionally, Plaintiff fails to request any relief as to his CZMA claim which would plausibly address any of his injuries.

      d. *Conclusion on Whether Plaintiff has Standing for his CWA/CZMA Claims*

Plaintiff has failed to show that he has standing for his CWA and CZMA claims. Plaintiff's CWA and CZMA claims against the Federal Defendants should be dismissed.

      2. <u>Whether Plaintiff has Article III Standing for his NEPA Claim</u>

Plaintiff alleges that he has a procedural injury as to his NEPA claim. Dkt. 110. With respect to "procedural injury," "to show a cognizable injury in fact, a plaintiff must allege that (1) the agency violated certain procedural rules; (2) these rules protect a plaintiff's concrete interests; and (3) it is reasonably probable that the challenged action will threaten their concrete interests." *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1197 (9th Cir. 2004). "A cognizable procedural injury exists when a plaintiff alleges that a proper EIS has not been prepared under [NEPA] when the plaintiff also alleges a 'concrete' interest-such as an aesthetic or recreational interest-that is threatened by the proposed action. *Id*.

Plaintiff alleges that FRA has violated its duty under NEPA to conduct an Environmental Assessment ["EA"], EIS, or other study on the Port of Olympia Intermodal Infrastructure Enhancement Project and related development (Dkt. 1, at 11), meeting the first and second prongs: allegations "that a proper EIS has not been prepared under [NEPA]." *City of Sausalito,* at 1197. As to the third prong, Plaintiff asserts that his aesthetic interest in the area has been negatively impacted by the development. Accordingly, Plaintiff appears to allege sufficient facts to have standing as to his NEPA claim.

       d.  *Conclusion on Standing*

Plaintiff has failed to allege sufficient facts to show that he has Article III standing to challenge the Federal Defendants' action or inaction under the CWA or CZMA. Plaintiff's claims against them should be dismissed for lack of standing. Even presuming Plaintiff has standing to assert his claims against the Federal Defendants, the Federal Defendants' Motion to Dismiss should be granted on the alternative grounds below.

     3.  Claims Against Specific Federal Defendants

       a.  *Claims Against EPA*

Suits against the EPA, as against any agency of the United States, and against officials of the United States, including EPA Administrators, are barred by sovereign immunity, unless there has been a specific waiver of that immunity. *Sierra Club v. Whitman*, 268 F.3d 898, 901 (9th Cir. 2001). "Here, Congress has waived immunity in § 1365(a)(2) [Section 505(a)(2) of the CWA]

only for suits alleging a failure of the Administrator to perform a non-discretionary duty." Thus, if the EPA Administrator acted within her discretion, the claims against her should be dismissed for lack of jurisdiction. *Id.*

Plaintiff's Complaint alleges that "the EPA administrator has nondiscretionary duties to require States to implement the CWA in accord with . . . These duties have not been complied with in Washington, or nationally." Dkt. 1, at 4 (. . . punctuation in original). Plaintiff asserts that the EPA Administrator's grant of authority to the State of Washington to issue NPDES permits is "manifestly unlawful and beyond the discretionary power of the administrator in that 33 U.S.C. 1342, at C (2) provides that '[a]ny state permit program . . . shall at all times be in accordance with this section and guidelines promulgated pursuant to section 1314 (i)(2).'" Dkt. 1, at 5. Plaintiff then alleges that the State of Washington has violated the "monitoring, reporting, enforcement, funding, personnel, and manpower" requirements listed in 1314(i)(2). *Id.,* at 5-6. Plaintiff alleges that "EPA and/or the State have identified the City's, Port's, LOTT's and Weyerhaeuser's Facilities as point sources, the discharges of which contribute to violations of applicable water quality standards." Dkt. 1, at 7. Plaintiff asserts that he has a cause of action against the EPA administrator for failing to perform "mandatory duties in regard to administration of the CWA, and /or CZMA, creating a cause of action under § 505(b)" of the CWA. Dkt. 1, at 8.

Plaintiff also cites § 505(a) of the CWA, but as above, he makes no allegation that the EPA is a discharger, so his claim against them under § 505(a) should be dismissed. *City of Las Vegas*, at 703.

Plaintiff's conclusory allegations that the EPA Administrator violated a mandatory duty are insufficient under *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009), to show that he has stated a "claim to relief that is plausible on its face." The one specific duty Plaintiff alleges that the Administrator failed to perform is not a mandatory duty. Plaintiff points to no Ninth Circuit authority that the Administrator has a mandatory duty take an enforcement action against the State - to revoke Washington's authority to continue to administer the NPDES program for

failing to be in full compliance with the CWA.

Indeed, Ninth Circuit authority lends itself to an opposite conclusion. In *Sierra Club v. Whitman*, the Ninth Circuit determined that 33 U.S.C. § 1319(a)(3), which provides that the Administrator <u>shall</u> take certain actions whenever [s]he finds that a person is in violation of the NPDES, does not impose a mandatory duty upon the Administrator to make such findings. *Sierra* at 901 (*emphasis added*). The Court further found that 33 U.S.C. § 1319(a)(3), which provides that the Administrator <u>shall</u> take certain actions whenever she finds that a person is in violation of NPDES does not impose a mandatory duty upon the Administrator to take enforcement actions upon such violations. *Id*. Although not reviewing the precise portion of the statute here, the Court's reasoning is helpful. The Court noted, "[f]irst and most important is the traditional presumption that an agency's refusal to investigate or enforce is within the agency's discretion, unless Congress has indicated otherwise." *Id*. Plaintiff fails to make any showing that Congress intended otherwise. The *Sierra* Court further reasoned that "the EPA's decision not to take enforcement measures, like a prosecutor's decision not to indict, is one that is typically committed to the agency's absolute discretion, such that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Sierra* at 903. Accordingly, under the reasoning in *Sierra Club v. Whitman*, because Plaintiff is seeking enforcement actions from the EPA and these duties are discretionary rather than mandatory, the Administrator is entitled to sovereign immunity. Plaintiff's citation to a Southern District of Indiana case, *Save the Valley v. U.S. EPA,* 99 F. Supp.2d 981 (S.D. Ind. 2000), holding to the contrary, is unhelpful.

Although it is unclear, to the extent that Plaintiff is asserting a claim challenging the Administrator's 1973 decision to allow Washington to oversee the state's NPDES program, Plaintiff's claim against the EPA and the administrator should be dismissed. Plaintiff makes no showing that this Court has jurisdiction to review such a claim. Under section 509(b)(1)(D), 33 U.S.C. § 1369 (b)(1)(D), "review of the Administrator's action . . . in making any determination as to a State permit program submitted under section 1342(b) of [the CWA] . . . may be had by any interested person in the Circuit Court of Appeals of the United States for the Federal judicial

district in which such person resides or transacts business." Moreover, Plaintiff does not address the Federal Defendants' argument that even if the Court did have jurisdiction to hear such a claim, the statute of limitations would bar his claim.

Plaintiff's other allegations regarding the Administrator's actions are likewise unpersuasive to show that she is failing in her non-discretionary duties. Plaintiff fails to allege sufficient non-conclusory facts from which the Court could add reasonable inferences to hold that he has stated a CWA claim against the EPA (or other Federal Defendants to the extent that he makes one), that is "plausible on its face." Plaintiff's CWA claims against the Federal Defendants should be dismissed.

### b. *Claims Against NOAA*

Plaintiff's claims against NOAA should be dismissed. Plaintiff alleges in his Complaint that the "Secretary of Commerce has a duty to require that all states receiving CZMA funding implement the CZMA. This duty has been neglected in Washington State and in the other states with voluntary CZMA compliance agreements." Dkt. 1, at 4.

As above, Plaintiff points to no authority which allows a private right of action under the CZMA. To the extent that Plaintiff attempts to rely on the CWA's citizen suit provisions, his CZMA claim should be dismissed. Plaintiff's Complaint fails to allege non-conclusory factual content against NOAA which is plausibly suggestive of a claim entitling him to relief. *Ashcroft v. Iqbal*, at 1949.

### c. *Claims Against FRA*

Under the heading "NEPA Claim" Plaintiff alleges that "[b]y expending federal funds for the Port of Olympia Intermodal Infrastructure Enhancement Project and related development without an EIS or other adequate assessment of regional and cumulative impacts, including those related to water quality, the CZMA, and CWA compliance, the Port, WSDOT, and the FRA violated NEPA." Dkt. 1, at 11. Plaintiff seeks an injunction that the "Intermodal Infrastructure Enhancement project be enjoined until all public records have been disclosed and a proper EIS conducted under NEPA." Dkt. 1, at 12.

Plaintiff's claims against FRA should be dismissed. Under NEPA, the scope of an EIS is related to the scope of the proposed federal action. *Kleppe v. Sierra Club,* 427 U.S. 346, 399 (1976). "In the absence of a proposal for a [federal ] regional plan of development, there is nothing that could be the subject of the analysis envisioned by the statute for an impact statement." *Id.* Plaintiff has failed to allege that there is a federal proposal for regional or national development by a federal agency. Plaintiff argues that there should be a federal proposal for national and regional freight policy, (Dkt. 110 at, 6) implicitly acknowledging that there is no such policy currently. Accordingly, Plaintiff has not alleged sufficient facts from which to conclude that he may plausibly be entitled to an order requiring the FRA to prepare an EIS. *Id.* His claim against FRA should be dismissed.

### D. MOTION TO AMEND COMPLAINT RELATING TO STATE AND FEDERAL DEFENDANTS

Fed. R. Civ. P. 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." "Five factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint. Futility alone can justify the denial of a motion to amend." *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004)(*internal quotations and citations omitted*).

#### 1. Amendments Regarding State Defendants

Plaintiff's Motion to Amend his Complaint (Dkt. 83) to add claims against Washington State Governor, Christine Gregoire, and Director of Washington State Department of Ecology, Jay Manning, should be denied as futile. To the extent that he seeks relief which is anything other than prospective injunctive relief, his claims are barred by the Eleventh Amendment, as above.

To the extent that he makes CWA claims against them, he makes no showing that they are dischargers and so "cannot be in violation of an 'effluent standard or limitation.'" *City of Las Vegas*, at 703. He does not allege that either of them are in "violation of . . . an Order issued by the Administrator." Accordingly he fails to plead any available claim under the citizen suit

provision (§ 505) of the CWA and his motion to amend his complaint to add these claims should be denied.

Plaintiff has failed to show that he has a private right of action against Governor Gregoire or Director Manning under the CZMA. To the extent that he makes a CZMA claim against them, his motion to amend should be denied.

### 2. Amendments Regarding Federal Defendants

Plaintiff's Motion to Amend his Complaint to reassert his CWA and CZMA claims should be denied. Plaintiff repeats his earlier claims and makes no showing that these claims are now able to survive a motion to dismiss.

Plaintiff's Motion to Amend his Complaint to add allegations regarding his NEPA claim should be denied. Plaintiff acknowledges that the pleading he offers as a proposed Amended Complaint is not a full complaint but only contains additional paragraphs to be added. Dkt. 108. Plaintiff seeks to add in his NEPA claim that "the Port of Olympia's Intermodal Infrastructure Enhancement project is a major federally funded project subject to NEPA, which even standing alone requires some form of NEPA compliance such as a CE, EA, FONSI, or EIS." Dkt. 108 at 9. Plaintiff's conclusory allegations that these are "major federally funded projects" is insufficient to find he has stated a plausible claim for relief. Even assuming his conclusory statement was sufficient, Plaintiff makes no showing that federal funding alone is sufficient to constitute a "federal action" requiring NEPA compliance. Although there are no clear standards for defining the point at which federal participation transforms a state or local project into major federal action, marginal federal action will not render otherwise local action federal. *Rattlesnake Coalition v. U.S. E.P.A.,* 509 F.3d 1095, 1101 (9th Cir. 2007) (*citing Almond Hill Sch. v. U.S. Dep't of Agric.*, 768 F.2d 1030, 1039 (9th Cir.1985)). "To determine whether a state development plan constitutes a major federal action under NEPA, we look to the nature of the federal funds used and the extent of federal involvement." *Id*. Not only must significant federal funding be used, "federal decisionmakers must also retain power, authority, or control over the state project." *Id.* Plaintiff's proposed amendments contain no allegations that federal

decisionmakers have any "power authority, or control" over the projects at issue. Plaintiff merely maintains that there should be a federal policy in place.

Plaintiff failed to respond to the Federal Defendants arguments regarding the futility of amendment here. Plaintiff's Motion to Amend (Dkt. 83) should be denied.

### E. CONCLUSION

The Court is sympathetic to Mr. West's desire to protect the environment, but he has run up against statutes that are highly complex procedurally, and that make it extremely difficult - even for lawyers - to successfully navigate the statutory sandbars and shoals to reach the safe harbor desired - which, here, would be decisions on the merits of his claims. The dismissals entered here are procedural in nature, and do not reach the merits. Such is the law.

### III. ORDER

Therefore, it is hereby, **ORDERED** that:

- Defendants Washington State Department of Ecology and State of Washington's FRCP 12 (b)(6) and 12(b)(1) Motion to Dismiss (Dkt. 69) is **GRANTED**, and Plaintiff's claims against them are **DISMISSED**;
- Defendants Lisa P. Jackson, Administrator, U.S. Environmental Protection Agency; Gary Locke, Secretary, U.S. Department of Commerce (National Oceanic and Atmospheric Administration), Ray La Hood, Secretary, U.S. Department of Transportation's ("Federal Railroad Administration") Motion to Dismiss (Dkt. 68) is **GRANTED**, and Plaintiff's claims against them are **DISMISSED**;
- Plaintiff's Motion to Amend Complaint (Dkt. 83) is **DENIED.**

The Clerk of the Court is instructed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 7th day of August, 2009.

Robert J Bryan
United States District Judge

ORDER
Page 19