UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ARTHUR WEST,<br><br>            Plaintiff,<br><br>   v.<br><br>STEPHEN L. JOHNSON, U.S. EPA ADMINISTRATOR, U.S. SECRETARY OF COMMERCE, WASHINGTON STATE DEPARTMENT OF ECOLOGY, ENVIRONMENTAL HEARINGS OFFICE, STATE OF WASHINGTON, PORT OF OLYMPIA, CITY OF OLYMPIA, WEYERHAEUSER NR COMPANY, LOTT, FEDERAL RAILROAD ADMINISTRATION, WASHINGTON STATE DEPARTMENT OF TRANSPORTATION,<br><br>            Defendants. | CASE NO. C08-5741RJB<br><br>ORDER GRANTING DEFENDANT CITY OF OLYMPIA'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, JOINED BY DEFENDANT LOTT and DEFENDANT PORT OF OLYMPIA'S MOTION TO DISMISS, JOINED BY DEFENDANT WEYERHAEUSER NR COMPANY |

     This matter comes before the Court on Defendant City of Olympia's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Dkt. 54), joined by Defendant LOTT (Dkt.56), and Defendant Port of Olympia's Motion to Dismiss (Dkt. 78), joined by Defendant Weyerhaeuser NR Company ("Weyerhaeuser")(Dkt. 81). The Court has considered the pleadings filed in support of and in opposition to the motions and the file herein.

ORDER
Page 1

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A. FACTS

On December 12, 2008, Plaintiff, *pro se,* filed this suit asserting claims under several federal and state statutes. Dkt. 1. Plaintiff broadly asserts that the all the Defendants have violated the Clean Water Act ("CWA"), 33 U.S.C. § 1251 *et seq.*, (including provisions of the National Pollutant Discharge Elimination System ("NPDES")). *Id.* As is relevant to the motions before the Court, Plaintiff claims that the Port has violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq. Id.* Plaintiff also alleges that the City, Port, and the now dismissed Washington Dept. of Transportation have withheld public records regarding the Intermodal Infrastructure Enhancement Project and East Bay Redevelopment area, citing Washington's Public Records Act, RCW 42.56 *et seq. Id.*

A background on the federal statues referenced in the Complaint - the CWA, NEPA, and the Coastal Zone Management Act ("CZMA"), is contained in this Court's Order Granting Defendants Washington State Department of Ecology ("DOE") and State of Washington's FRCP 12 (b)(6) and 12(b)(1) Motion to Dismiss (Dkt. 69) and the Federal Defendants' Motion to Dismiss (Dkt. 68), and is adopted herein by reference.

The remaining Defendants now file motions to dismiss, arguing that Plaintiff failed to provide them with an adequate 60-day notice of his intent to sue, which is a jurisdictional prerequisite to filing a case under the CWA's citizen suit provision. Dkts. 54, 56, 78, and 81.

## B. PLAINTIFF'S 60-DAY NOTICE

On September 20, 2008, Plaintiff sent a letter entitled "Notice of Violations and Intent to File Suit Under the Clean Water Act, and Intent to Seek Revocation of State CWA Permitting Authority" to U.S. EPA Administrator, U.S. Attorney General, City of Olympia, Port of Olympia, LOTT, Weyerhaeuser, and DOE Director Jay Manning ("notice letter"). Dkt. 1-2, at 1. The notice letter states that Plaintiff intended to bring suit against all of them for "violation of the CWA; authorization, construction and operation of unpermitted facilities." *Id.* He further asserts, "continuing violations of 'an effluent standard or limitation,' (33 U.S.C. 1311, -12, 1316-17,

1344-45) including standards of performance defined in 33 U.S.C. 1316, permit conditions or requirements and/or a permit, authorization, or an order issued by the Administrator or a State with respect to such standard or limitations." *Id*. Plaintiff's notice letter states the Port, City, LOTT, and Weyerhaeuser have failed to "obtain, operate under, and/or comply with the conditions and limitations of [their NPDES permits] . . . at the Port's, City's, Weyerhaeuser's, and LOTT's wastewater treatment facilities and industrial and storm water collection and discharge systems located in Thurston County, Washington, in the City of Olympia." *Id.*

### C. PENDING MOTIONS

The City, joined by LOTT, now move for dismissal of Plaintiff's CWA claims pursuant to Fed. R. Civ. P. 12(b)(1), arguing that Plaintiff's notice letter is insufficient to give the Court jurisdiction because: 1) it is overly broad and so the City and Lott are unable to identify which standard, limitation or order they are alleged to have violated, 2) they are unable to determine the activity he is alleging caused the violations, 3) the notice letter is so vague they are unable to tell the person or persons responsible for the alleged violations, and 4) the notice letter does not sufficiently identify the location or dates of the alleged violation. Dkts. 54 and 56.

Defendant Port, joined by Weyerhaeuser, move for dismiss of Plaintiff's CWA claims against them arguing: 1) the CWA notice provisions are jurisdictional, 2) the U.S. Supreme Court precedent requires that strict construction of the notice requirements, and 3) Plaintiff's notice letter so overly broad and vague it is defective. Dkts. 78 and 81.

All remaining Defendants request that this Court choose not to exercise supplemental jurisdiction over the state law claims and dismiss them. Dkts. 54, 56, 78, and 81.

Plaintiff files several Responses to the motions, arguing: 1) his notice gave sufficient information to the recipients, 2) even if his notice is not sufficient, he needs answers to his discovery in order to "establish a proper factual record," and 3) he sent a letter in 2006 that sufficiently notified these parties, and they are aware of the purported violations from other cases Plaintiff has filed. Dkts. 85, 89, and 108.

This Opinion will first address whether it has subject matter jurisdiction over the CWA

claims, and then whether it should decline to exercise supplemental jurisdiction over the state law claims.

## II. DISCUSSION

### A. MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION - STANDARD

Under Fed. R. Civ. P. 12 (b)(1), a complaint may be dismissed for lack of subject matter jurisdiction. When reviewing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a court must accept all factual allegations in the complaint as true. *Ojo v. Farmers Group, Inc.*, 565 F.3d 1175, 1183 (9th Cir. 2009). Allegations are to be viewed in the light most favorable to the plaintiff. *Id.*

### B. 60 DAY NOTICE REQUIREMENT

At least sixty days before commencing a citizen action under Section 505 of the CWA, a plaintiff must provide notice to the EPA, the State, and any other violator of the alleged violation. 33 U.S.C. § 1365. "The notice serves important public purposes; this kind of litigation is not like a mere private dispute. That is underscored by the fact that the notice must be given not only to the alleged violator, but also to the Administrator, and to the State where the alleged violation occurred." *Center For Biological Diversity v. Marina Point Development Co.*, 566 F.3d 794, 800 (9th Cir. 2009). According to the U.S. Supreme Court,

> [T]he legislative history indicates an intent to strike a balance between encouraging citizen enforcement of environmental regulations and avoiding burdening the federal courts with excessive numbers of citizen suits. Requiring citizens to comply with the notice and delay requirements serves this congressional goal in two ways. First, notice allows Government agencies to take responsibility for enforcing environmental regulations, thus obviating the need for citizen suits.... Second, notice gives the alleged violator an opportunity to bring itself into complete compliance with the Act and thus likewise render unnecessary a citizen suit. This policy would be frustrated if citizens could immediately bring suit without involving federal or state enforcement agencies. Giving full effect to the words of the statute preserves the compromise struck by Congress.

*Id.* (*citing Hallstrom v. Tillamook County*, 493 U.S. 20, 29, (1989)). Compliance with the 60 notice provision is a "jurisdictional necessity." *Id.* When a party does not comply with the requirements of the 60-day notice provision, "the district court must dismiss the action as barred by the terms of the statute." *Center For Biological Diversity,* at 800.

The notice must include the following:

> Notice regarding an alleged violation of an effluent standard or limitation or of an order with respect thereto, shall include sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice.

40 C.F.R. § 135.3(a).

Upon review of the notice letter in this case, it is apparent that the notice is not sufficient to support district court jurisdiction.

### 1. *Specific Standard, Limitation, or Ordered Alleged to Have Been Violated, Activity Alleged to Constitute a Violation, and Person or Persons Responsible for the Alleged Violation*

Plaintiff's notice letter lists the "violations" as follows:

A. Discharge Prohibitions: Discharge of raw sewage due to collection system wastewater overflows; treatment plant bypasses; prohibition of discharge of non-disinfected or untreated turbid storm and waste water; discharge flow limit due to failure to monitor and report flow; discharge from unpermitted, unlawful, unmonitored and undisclosed collections systems.

B. Effluent Limitations Violations: Lead, Zink [sic], and Mercury limits; daily maximum limit on total Coli form organisms; Biological Oxygen Demand; PH; turbidity; settle able solids; Chlorine residual limits; toxic pollutant limits; Dioxin and related compounds; TMDL limits for discharge into 303(d) listed waters; deliberate and negligent failure to report, test, or measure discharge to ensure compliance.

C. Receiving Water Limitations Violations: PH limits, turbidity levels for failure to monitor or report; all other items mentioned in B, above; prohibition on floating material, order, taste, discoloration, bottom deposits, biostimulants, bioaccumulation of pesticides, fungicides, wood treatment, chemical or other toxic pollutants for failure to monitor or report.

D. Reporting and Monitoring Violations: failure to monitor or report due to collusion or conspiracy to suppress and conceal violations; failure to measure due to deliberate policy, collection system defect, or equipment malfunctions; failure to construct system with proper procedure in a manner to allow reasonable monitoring, monitor or report levels of turbidity, PH, mercury, chromium, lead, arsenic, cadmium, mercury, molybdenum, nickel, selenium, zinc, and toxic pollutants and failure to provide a basis for not monitoring pursuant to 40 C.F.R. 131.36; filing monthly and or quarterly self-monitoring reports late or not at all.

E. Response Violations: failure to conduct level 1 or other response to events as required in permit; failure to respond to known violations.

F. 40 C.F.R. Violations: discharge into section 303(d) listed waters of Budd inlet of TMDL amounts in excess of or in violation of 40 C.F.R. 130.1-15, and or failure to adopt policies or plans to comply with 40 C.F.R.

Dkt. 1-2, at 3-4. Under the heading "G. Discharge of Toxic Pollutants" Plaintiff states, "[T]he following comprise the list of toxic pollutants designated pursuant to section 307(a)(1) of the Act

ORDER
Page 5

which the named entities are responsible for unlawfully discharging on each specific day and from each specific outfall over the last four years." Dkt. 1-2, at 4. Plaintiff then lists over 100 compounds including: "Acenaphthene, Acrolein, Acrylonitile, Aldrin/Dieldrin, . . . Antimony and compounds, . . . Arsenic and compounds, Asbestos, Benzidine, Beryllium and compounds, Cadmium and compounds, Carbon tetrachloride, Chlordane, . . . Chlorinated benzenes, . . . , Chlorinated ethanes, . . . Chloroalkyl ethers. . ." *Id*. Plaintiff's notice letter further states that "in addition to all of the above violations, this notice covers any and all violations of Permits held by the City, Port, and LOTT evidenced by the Port and City's monitoring reports . . . during the period January 2004 through the present." *Id.*

Plaintiff's notice is so broad it fails to provide the Defendants sufficient information to identify "the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, or the person or persons responsible." Plaintiff does not provide the City, Port, LOTT and Weyerhaeuser enough information to identify the specific effluent discharge limitation which is purportedly violated. Plaintiff's vague allegations do not provide enough information to allow them to determine the activities they engaged in that are alleged to constitute a violation. His assertions of a vast conspiracy among the recipients of the letter to violate most of the provisions of the CWA do not give them useful guidance. Plaintiff's "everything but the kitchen sink" approach leaves the City, Port, LOTT, and Weyerhaeuser to guess which violation each is alleged to be responsible for. Plaintiff's inclusion of so many violations alleged to have been committed by the City, Port, LOTT and Weyerhaeuser "for each and every day in the past five years" (Dkt. 1-2, at 5) does not give the notified parties a chance to fulfill the purpose of the statute - to allow the Defendants an opportunity to correct a mistake or give the government entities in charge of enforcement a reasonable basis upon which to act.

      2.  *Location of the Alleged Violation*

Plaintiff's notice letter does not give adequate information to the City, Port, LOTT, or Weyerhaeuser to determine which of its point sources, if any, is responsible for which violation. The notice letter states that the "locations of the violations is the property of Port of Olympia, and

ORDER
Page 6

particularly the former Cascade Pole site, present Log Yard, LOTT facility, and East Bay Redevelopment Area with the accompanying collection systems and discharge points, as permitted, unpermitted, and proposed." Dkt. 1-2, at 3. The notice letter does not attempt to inform the recipients which outfall was involved in which of the hundreds of violations listed. The letter does not identify unpermitted discharge points or which points are "proposed." The letter have as attachments certain maps, but they lack any specificity. The notice letter is accordingly insufficient.

4. *Date or Dates of Such Violation*

Plaintiff's notice letter asserts "a separate violation for each of the appended described point sources, effluent limitations and monitoring requirements, for each and every day in the past five years." Dkt. 1-2, at 5. Plaintiff's notice is so broad as to the dates of the alleged violations as to render his notice unhelpful to the Defendants. Although exact dates are not required, some indication of a timeframe is required or would render meaningless the language in 40 C.F.R. § 135.3(a) requiring "the date or dates of such violation." Plaintiff provides no reasonable limitation in the time frame he alleges the violations occurred.

Plaintiff asserts that he needs discovery to show which violation is occurring when, where, and who is responsible. Plaintiff argues that information is held by Defendants. Plaintiff's argument fails for two reasons. First, Plaintiff has made extensive requests for documents under Washington's Public Records Act, RCW 42.56 *et seq.*, and has received over 50,000 pages from the City alone just since May of 2008. Dkt. 104. Plaintiff has ample opportunity to get the information to provide sufficient notice. Second, and more importantly, he can not circumvent the 60 day notice requirement by including most of the violations listed in the CWA in his notice, and then relying on discovery to make his claim. If he were permitted to proceed in such a manner, there would be no call for the 60 notice provision. Such a circumstance would eliminate an alleged violator's chance to correct the violation and undercut the role of the primary enforcers of the statute - the federal and state governments.

5. *Other Sources of Notice?*

ORDER
Page 7

1       Plaintiff's argument that he sent a notice letter in 2006 to the Port, and that gave all the parties to this suit adequate notice of their violations, is unavailing. Plaintiff cites no authority that parties in one notice are charged with the information in a different notice which they did not receive. Plaintiff makes no showing that the 2006 letter is adequate as to the Port. Plaintiff's argument that the City is aware of his contentions through other litigation is equally problematic as to the other Defendants. Moreover, despite his assertion, Plaintiff makes no showing that the environmental litigation that he has brought against the City has provided it sufficient notice as to this case and the claims asserted here.

### C. NEPA CLAIM

At the present time, only one federal claim remains - a NEPA claim against the Port. As to that claim, "NEPA does not regulate the conduct of private parties or state or local governments. It regulates the federal government." *Sierra Club v. U.S. E.P.A.*, 995 F.2d 1478, 1485 (9th Cir. 1993). "Since NEPA requires only action by the [federal] government, no private party can comply with NEPA. It is for that reason that in a lawsuit to compel compliance with NEPA, no one but the federal government can be a defendant." *Id.*

Accordingly, Plaintiff should be ordered to show cause why his NEPA claim should not be dismissed. His brief should be filed by August 21, 2009. Opposing briefs, if any, should be filed by August 28, 2009. A reply, if any, should be filed by September 4, 2009. Briefs should be limited to three pages. Consideration of the parties' responses to the Order to Show Cause should be noted for September 4, 2009.

### D. SUPPLEMENTAL JURISDICTION

Pursuant to 28 U.S.C. § 1367(c), district courts may decline to exercise supplemental jurisdiction over a state law claims if (1) the claims raise novel or complex issues of state law, (2) the state claims substantially predominate over the claim which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. "While discretion to decline to exercise supplemental jurisdiction over state law claims is triggered

ORDER
Page 8

by the presence of one of the conditions in § 1367(c), it is informed by the values of economy, convenience, fairness, and comity." *Acri v. Varian Associates, Inc*., 114 F.3d 999, 1001 (9th Cir. 1997)(*internal citations omitted*).

Although it is generally within a district court's discretion either to retain jurisdiction to adjudicate the pendent state claims or to dismiss them without prejudice to be filed in state court if Plaintiff so chooses, *Harrell v. 20th Ins. Co.,* 934 F.2d 203, 205 (9th Cir. 1991) in the interest of fairness, the parties should be given an opportunity to be heard. Parties should be ordered to show cause why, if any they have, the remaining state law claims should not be dismissed without prejudice. Parties' briefs, if any, are due August 28, 2009. Parties briefs should not exceed three pages. Consideration of the parties' responses to the Order to Show Cause should be noted for September 4, 2009.

### E. CONCLUSION

Plaintiff has failed to comply with the requirements of the 60 day notice provision. This Court must dismiss his CWA claims because it does not have subject matter jurisdiction to hear them. The Court is sympathetic to Mr. West's desire to protect the environment, but he has run up against statutes that are highly complex procedurally, and that make it extremely difficult - even for lawyers - to successfully navigate the statutory sandbars and shoals to reach the safe harbor desired - which, here, would be decisions on the merits of his claims. The dismissals entered here are procedural in nature, and do not reach the merits. Such is the law.

### III. ORDER

Therefore, it is hereby, **ORDERED** that:

- City of Olympia's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Dkt. 54), joined by Defendant LOTT (Dkt.56) **IS GRANTED;** Plaintiff's federal claims against the City of Olympia and LOTT **ARE DISMISSED**
- Defendant Port of Olympia's Motion to Dismiss (Dkt. 78), joined by Defendant Weyerhaeuser NR Company (Dkt. 81) **IS GRANTED**; and Plaintiff's claims against Weyerhaeuser NR Company are **DISMISSED**; Plaintiff's CWA claims against the Port of

    Olympia **ARE DISMISSED**;

- Plaintiff **IS ORDERED TO SHOW CAUSE WHY**, if any he has, his remaining NEPA claim should not be dismissed. His brief if any, should be filed by August 21, 2009. Opposing briefs, if any, should be filed by August 28, 2009. A reply, if any, should be filed by September 4, 2009. Briefs **SHALL** not exceed three pages. Consideration of the parties' responses to the Order to Show Cause **SHALL BE NOTED** for September 4, 2009.

- Parties **ARE ORDERED TO SHOW CAUSE WHY**, if any they have, the remaining state law claims should not be dismissed without prejudice. Parties' briefs, if any, are due August 28, 2009. Any responsive briefs shall be filed by September 4, 2009. Parties briefs **SHALL** not exceed three pages. Consideration of the parties' responses to the Order to Show Cause **SHALL BE NOTED** for September 4, 2009.

    The Clerk of the Court is instructed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

    DATED this 7th day of August, 2009.

Robert J Bryan
United States District Judge